**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
402 W. Broadway, Suite 400
San Diego, CA 92101
Telephone:     (619) 798-2006

**Counsel for Plaintiffs**

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKE ANDRICH and NATALIE GIANNE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CENTO FINE FOODS, INC.,<br><br>Defendant. | Case No:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE UNFAIR COMPETITION LAW & CONSUMER LEGAL REMEDIES ACT**<br><br>**No Jury Demand** |

CLASS ACTION COMPLAINT

## **TABLE OF CONTEN**TS

I.      JURISDICTION AND VENUE ..................................................................................................1

II.     NATURE OF THE ACTION ......................................................................................................1

III.    PARTIES ..................................................................................................................................4

IV.     PHYSICAL CHARACTERISTICS OF SAN MARZANO TOMOATOES ...................................4

V.      CENTO'S FRAUDULENT "CERTIFICATION" CLAIM AND RELATED MISREPRESENTATIONS ........................................................................................................5

VI.     THE LABELING OF CENTO SAN MARZANOS IS MISLEADING. ....................................11

VII.    PLAINTIFFS' PURCHASES OF CENTO SAN MARZANOS ...................................................13

VIII.   RELIANCE AND INJURY ......................................................................................................14

IX.     DEFENDANT'S PRACTICES WERE "UNFAIR" WITHIN THE MEANING OF THE CALIFORNIA UNFAIR COMPETITION LAW. ......................................................................14

X.      DEFENDANT'S PRACTICES WERE "UNLAWFUL" WITHIN THE MEANING OF THE CALIFORNIA UNFAIR COMPETITION LAW. ................................................................15

XI.     DELAYED DISCOVERY ........................................................................................................15

XII.    ADDITIONAL TOLLING ALLEGATIONS...............................................................................16

XIII.   CLASS ACTION ALLEGATIONS ...........................................................................................17

XIV.    CAUSES OF ACTION............................................................................................................17

PRAYER FOR RELIEF ........................................................................................................................20

XV.     NO JURY DEMAND ..............................................................................................................21

i

Plaintiffs Mike Andrich and Natalie Gianne, on behalf of themselves, all others similarly situated, and the general public, through their undersigned counsel, hereby sue Defendant Cento Fine Foods, Inc. ("Cento" or "Defendant") and upon information and belief and investigation of counsel, allege as follows:

## I.   JURISDICTION AND VENUE

1.      Jurisdiction is proper because Plaintiffs are citizens of California and because all claims are asserted under the laws of California and relate to a product that is sold in California and was purchased by Plaintiffs in California.

2.      Venue is proper under 28 U.S.C. § 1391 because thousands of class members reside and suffered injury in this District as a result of Defendant's conduct in this District; many of the acts and transactions giving rise to this action occurred in this District; and Defendant (1) is authorized to conduct business in this District, intentionally availed itself of the markets of this District through the distribution and sale of its products in this District, and (2) is subject to personal jurisdiction in this District.

## II.   NATURE OF THE ACTION

3.      "San Marzano tomatoes are considered the Ferrari or Prada of canned tomato varieties. Loyalists say they are well worth the higher price tag compared to other Italian or domestically produced options."[1]

 

4.      In "the way Champagne can only be produced in the Champagne region of France, real San Marzanos can only be grown, processed, and canned in a specific region of Italy."[2]

5.      San Marzano tomatoes were awarded "Protected Designation of Origin" status from the European Union. In Italy and all other members of the European Union, tomatoes sold as San Marzano

---

[1] Peggy Kieran. *What Is So Special About San Marzano Tomatoes?* MarthaStewart.com (April 16, 2025), available at www.marthastewart.com/7616623/san-marzano-tomatoes-explained.

[2] Nick DeSimone. *What Are San Marzano Tomatoes and Are They Really That Great?* All Recipes (March 9, 2023), available at www.allrecipes.com/what-are-san-marzano-tomatoes-7253617.

must meet strict production and quality standards.

6.      Il Consorzio di Tutela del Pomodoro San Marzano DOP (the "Consortium"), located in the ancient Roman town of Sarno in Campania, both promotes and regulates the sale of San Marzano tomatoes.

7.      The Consortium is the only entity which can certify and approve San Marzano tomatoes.

8.      The Consortium was granted the right to certify and approve San Marzano tomatoes by the European Union in 1996.

9.      Cento was a member of the Consortium until 2011, when it was ejected for committing fraud.

10.      San Marzano tomatoes are required to have firm flesh, high ratio of flesh to water, fewer seeds, a bittersweet taste, easily dissolving peel, and consistency between tomatoes.

11.      When a batch of tomatoes is inspected and found compliant with the Consortium's standards, they may bear the name "San Marzano," as well as use the seal of the Consortium.

12.      "[R]eal San Marzano's have what is referred to as a DOP, an acronym that translates to 'protected designation of origin.' This is the law that specifies where and how something can be grown and produced if a certain name is to be used. Parmigiano Reggiano is another popular Italian product with a DOP protections. These special requirements that limit where the tomatoes can be grown, and how they can be harvested and canned, mean that real San Marzano tomatoes can nearly break the bank compared to other canned tomatoes."[3]

13.      "The official Protected Designation of Origin quality seal put San Marzano tomatoes on the culinary map. Protected Designation of Origin (often abbreviated to PDO or DOP in Italian) is a European Union regulation that honors the status of foods like French Champagne and Italian Parmigiano-Reggiano; it defines where and how foods must be produced in order to carry the official designation."[4]

14.      "The volcanic soils in the San Marzano PDO—a relatively small region in southern Italy between Naples and Salerno—are famed for producing tomatoes with a balanced flavor that combines sweetness, tomatoey intensity, and just the right amount of acid." *Id.*

---

[3] Nick DeSimone. *What Are San Marzano Tomatoes and Are They Really That Great?* All Recipes (March 9, 2023), available at www.allrecipes.com/what-are-san-marzano-tomatoes-7253617

[4] *What Is So Special About San Marzano Tomatoes?*, supra note 1.

CLASS ACTION COMPLAINT

15. "Like honey and olive oil, San Marzano tomatoes have been the subject of fakery. . . .Over time, San Marzano tomatoes grown in Italy, but outside of the official region, have become available in the U.S." *Id.* "The issue with San Marzano tomatoes is widespread fraud. They command a higher price than regular canned tomatoes, and as with any other premium brand, counterfeits follow. Unlike faux Chanel bags, though, you can buy San Marzanos in legit stores."[5]

16. Defendant Cento Fine Foods, Inc. is the primary culprit of this tomato fraud in the United States. It sells "Cento San Marzano Certified Peeled Tomatoes" and "Cento San Marzano Organic Certified Peeled Tomatoes" (collectively "Cento San Marzanos").

17. Cento markets Cento San Marzanos as "Certified" San Marzano Tomatoes with claims which were designed to, and do, falsely convey they are the famous San Marzano tomato grown in the traditional method and certified by Consortium.

18. Defendant sells Cento Marzanos at a price premium over regular canned tomatoes and similar to actual certified San Marzanos. However, Cento San Marzanos are not of equivalent origin and quality to tomatoes certified by the Consortium.

19. Defendant's marketing and labeling of Cento San Marzanos as "Certified San Marzano" tomatoes is false, misleading, and unfair. They lack the taste, consistency, and other physical characteristics associated by consumers with certified San Marzano Tomatoes.

20. Plaintiffs Mike Andrich and Natalie Gianne purchased and used Cento San Marzanos in reliance upon Defendant's deceptive labeling, believing that they were authentic, certified San Marzano tomatoes.

21. However, Cento San Marzanos were not satisfactory to Plaintiffs because they were not authentic, DOP San Marzano tomatoes and lacked the physical characteristics of authentic San Marzano tomatoes.

22. Plaintiffs would never have purchased Cento San Marzanos, especially at their premium price, if they had known that they were inauthentic, and indeed *illegal* in Italy, home of San Marzano tomatoes.

---

[5] Maya Uyehara. *The Fake Rolex of Canned Foods*. TASTE (June 20, 2017), available at tastecooking.com/fake-rolex-canned-tomatoes.

3

### III.    PARTIES

23.    Plaintiff Mike Andrich is a citizen of California and a resident of Whittier who repeatedly purchased Cento San Marzanos during the class period. He bought Cento San Marzanos about 3 or 4 times annually during the class period, and his most recent purchase occurred at Claro's Italian Market in La Habra in late 2024 or early 2025.

24.    Plaintiff Natalie Gianne is a citizen of California and resident of Los Angeles who repeatedly purchased Cento San Marzanos during the class period. She bought Cento San Marzanos approximately 10 times during the class period, and her most recent purchases occurred at Pavillions and Whole Foods locations in the Los Angeles area in 2023.

25.    Defendant Cento Fine Foods, Inc. is a New Jersey corporation with its principal place of business in West Deptford, NJ. Cento markets, distributes, and sells Cento San Marzanos.

26.    Cento San Marzanos are sold at grocery stores and markets throughout the United States, on Defendant's website (https://shop.cento.com/collections/cento), and on the Amazon page for Cento San Marzanos, which Defendant controls.

27.    During the class period, Cento owned, manufactured, marketed, distributed, and sold Cento San Marzanos in California and throughout the United States.

### IV.    PHYSICAL CHARACTERISTICS OF SAN MARZANO TOMOATOES

28.    Authentic, DOP San Marzano tomatoes possess physical characteristics that render them superior to other tomatoes.

29.    The fruits

have a typical elongated shape and usually measure between six and eight centimeters; when ripe, the color is bright red. The thin skin peels off easily, enclosing firm, fleshy pulp with few seeds. The interior has two or three chambers and the taste is typically strong, sweet and sour. The dense, fleshy pulp ensures that San Marzano does not crush during processing, producing firm peeled tomatoes and consistent sauces.[6]

30.    "They've got thinner skin, firmer flesh, and significantly fewer seeds. But what really sets them apart is the taste. San Marzanos have a naturally rich, sweet flavor with just the right amount of

---

[6] Consorzio di Tutela del Pomodoro San Marzano dell'Agro Sarnese-Nocerino DOP. *Characteristics* (2025), available at https://consorziopomodorosanmarzanodop.it/en/characteristics/

4

acidity, nothing harsh or overpowering. That balance makes them perfect for slow-cooked sauces, because they concentrate beautifully without turning bitter."[7]

31.     "Their texture also makes a big difference. They're less watery than other tomatoes, so you get a thicker, silkier sauce without needing to cook it down forever. The result? A sauce that really lets the tomato flavor shine, often with no need for extra sugar or tons of seasoning. The San Marzano is, as the Italians might say, *perfetto*." *Id.*

## V.     CENTO'S FRAUDULENT "CERTIFICATION" CLAIM AND RELATED MISREPRESENTATIONS

32.     The Consortium is the only entity which can certify and approve San Marzano tomatoes.

33.     The Consortium was granted the right to certify and approve San Marzano tomatoes by the European Union in 1996.

34.     Defendant's claims that its tomatoes are "certified" "San Marzano" tomatoes misleadingly convey that the product is the famous San Marzano tomato certified by and exceeding the standards of Consorzio di Tutela del Pomodoro San Marzano dell'Agro Sarnese-Nocerino when in fact the product does not meet that standard.

35.     Defendant's labels imitate the labels of San Marzano Tomatoes that are certified by the Consortium, even though Cento San Marzanos are not of equivalent origin and quality to those tomatoes certified by the Consortium.

---

[7] Kristine Brogno. *Why Everyone Swears by Sam Marzano Tomatoes*. FOOD 52 (August 8, 2025), available at food52.com/story/why-san-marzano-tomatoes-are-the-best.

5





36.     For example, Defendant's front labels mimic the main elements required by the Consortium and displayed on actual, certified San Marzano Tomatoes.

37.     According to Defendant, Cento San Marzanos are "certified by an independent third-party agency that ensures the proper varietals and correct growing locations of our tomatoes. This certification combined with our quality assurance measures and production methods delivers superior quality from seeds to shelf."

38.     However, this third-party agency is not the Consortium, but Agri-Cert.

39.     Defendant's website states, "San Marzano tomatoes are regulated and certified authentic by an independent third party, Agri-Cert, using the guidelines created to regulate San Marzano tomatoes in

6

Italy."

40.     Defendant's website goes on to declare that the requirements for San Marzano Tomatoes were

> created to help differentiate a true San Marzano tomato that follows the criteria from other varietal Italian tomatoes grown outside the designated region or domestically. This ensures shoppers aren't misled by non-genuine products who use the San Marzano name in their products, which, without following the strict criteria, may be inferior quality or contain a different flavor profile.

# CENTO CERTIFIED SAN MARZANO TOMATOES

Cento Certified San Marzano Tomatoes have always been, and continue to be grown and produced in the Sarnese Nocerino area of Italy. They continue to follow the same premium-quality standards that Cento has always stood by, the standards that made us the leading brand in the United States for San Marzano tomatoes. San Marzano tomatoes are regulated and certified authentic by an independent third party, Agri-Cert, using the guidelines created to regulate San Marzano tomatoes in Italy. These guidelines were created to help differentiate a true San Marzano tomato that follows the criteria from other varietal Italian tomatoes grown outside the designated region or domestically. This ensures shoppers aren't misled by non-genuine products who use the San Marzano name in their products, which, without following the strict criteria, may be inferior quality or contain a different flavor profile.

41.     Such a claim is misleading and deceptive because this entity – Agri-Cert – is not authorized to, nor possesses the capabilities to, ensure that Defendant's products meet the specifications of San Marzano Tomatoes.

42.     Defendant's back labels tout its purported connection to the Agro Sarnese Nocerino area, the region where real, DOP certified San Marzano Tomatoes are grown.

43.     Defendant's map purportedly shows the area where its tomatoes are grown and canned:

7



44.      Up until around 2011, Defendant was a participant in the Consortium, as seen on its labels

at that time. Around 2011, Cento was ejected from the Consortium for committing fraud.

45.     The 2011 label for Cento San Marzanos pictured below on the left is similar to the current label pictured below on the right:

 



46.     The 2011 label reads, "The D.O.P. (Protected Designation of Origin) seal on this can

9

certifies that these tomatoes are authentic San Marzano tomatoes, produced with the proper method to ensure superior quality."

47.    The current label reads, "Our San Marzano tomatoes are certified by an independent third-party agency that ensures the proper seed varietals and correct growing locations of our tomoatoes. This certification combined with our quality assurance measures and production methods delivers superior quality from seed to shelf."

48.    In 2010, Italian police in Solarno obtained a criminal search warrant and raided Cento's Italian operations, including corporate alter egos Alanric Food, Italian partner or subsidiary Solania s.r.l., and Italian manager Giuseppe Napoletano, for distributing peeled tomatoes bearing counterfeit DOP labeling.

49.    The investigation uncovered "144,000 cans" of tomatoes "with the brand label Cento" that had been falsely labeled "San Marzano DOP tomato" or "San Marzano DOP organic tomato."

50.    Napoletano was found to have forged the signatures of tomato farmers and repeatedly committed fraud in order to obtain false certifications.

51.    On May 15, 2019, the Court of Nocera Inferiore found Giuseppe Napoletano and his father, Eugenio Napoletano, "guilty of the crime they were charged with."

52.    Napoletano and his father were found guilty of criminal fraud, had fines imposed upon them, and were given 26-month suspended sentences.

53.    Defendant continued to do business with Napoletano despite his criminal fraud conviction, and instead embarked on the current scheme, which is to continue to sell fake San Marzano tomatoes, but with a fake "certification" by a captive "certifier" that will certify its substandard tomatoes for money.

54.    In 2022, journalists from RAI 3, an Italian government-owned national public broadcaster, came to the U.S. to investigate "where the real DOP San Marzano tomatoes end up once they cross the Atlantic, and how there can be so many brands masquerading as 'San Marzano Tomatoes' in US grocery stores."[8]

55.    The investigation revealed that "[m]any of the brands labeled 'San Marzano Tomatoes' here

---

[8] *San Marzano Tomatoes: Rai 3 Reports Fraud in the U.S.*, Gustiamo (February 3, 2023), available at: https://www.gustiamo.com/gustiblog/san-marzano-tomatoes-rai-3-reports-fraud-in-the-us/.

CLASS ACTION COMPLAINT

in the US are illegal to sell in Europe." *Id.*

56.    Further, the investigation proved "**the biggest offender is the omnipresent brand Cento. While their plum-shaped tomatoes are grown in Italy, they are not DOP-certified San Marzano tomatoes. That's despite the large 'CERTIFIED' lettering on their packaging.**" *Id.*

57.    "It's illegal to sell these brands in Europe, since they intentionally mislead consumers." *Id.*

58.    "Beyond the deception, fake San Marzano tomatoes sabotage Italian farmers making the real thing. Gustarosso's founder and president Eduardo Ruggiero says as little as 5% of tomatoes labeled 'San Marzano' in the US are real DOP San Marzanos." *Id.*

59.    "This is hugely harmful to business such as Gustarosso trying to sell an honest product." *Id.*

## VI.    THE LABELING OF CENTO SAN MARZANOS IS MISLEADING.

60.    Competitor brands in the middle and right columns below are actually certified by the relevant authority, the Consortium, and are labeled as "San Marzano Tomato of Agro Sarnese-Nocerino Area":

  

61.    Competitor brands adjacent to Defendant's on grocery shelves, are labeled as certified through the acronym, "D.O.P."

62.    Cento San Mazanos, pictured in the left column above, are misleading because, aside from not being real San Marzano Tomatoes, they are marketed as such adjacent to authentic San Marzano Tomatoes.

63.    Where two similarly labeled products are situated in the same category or section of a store

11

and their representations as to quality and fill are identical, yet the former is lacking the quantity of the characterizing ingredient (San Marzano Tomatoes) or qualities (higher ratio of flesh, fewer seeds, firmer flesh, less water), the reasonable consumer will be deceived.

64.    Accordingly, the reasonable consumer will and does pay more money for the inferior former product under the false impression that it contains Consortium certified San Marzano tomatoes.

65.    The labeling and appearance of the Cento San Marzanos creates an erroneous impression that they contain DOP certified San Marzano Tomatoes of equivalent quality to those bearing certification by the relevant body, the Consortium.

66.    The proportion of this component has a material bearing on price or consumer acceptance of Cento San Marzanos because they are more expensive and desired by consumers.

67.    Further, Defendant's website and the Cento San Marzano Amazon page, which Defendant controls, make the following misleading representations, which convey that the product is the famous DOP certified San Marzano tomato grown in the traditional method and certified by and up to the standards of Consorzio di Tutela del Pomodoro San Marzano dell'Agro Sarnese-Nocerino, when in fact, the product does not meet that standard:

- "San Marzano Certified"
- "America's Favorite San Marzano Tomato"
- "San Marzano tomatoes are widely recognized by top chefs, Italian cooks and food aficionados as the gold standard for taste."
- "At Cento, we go to great lengths in monitoring our planting, growing and harvesting processes to ensure our tomatoes retain the world-renowned flavor that makes them so special."
- "The rich volcanic soil, high water table and ideal Mediterranean microclimate all combine to make San Marzano tomatoes the premier choice for any recipe."
- "Certified by an independent E.U. approved US accepted third-party agency under UNI EN ISO 22005:20008 for supply chain and product traceability."
- "Cento Certified San Marzano Tomatoes are still grown in the traditional method: once the seedlings have matured, the plants are moved to the fields where they are hand-tied to wooden poles. When the tomatoes are vine-ripened, they are picked by hand and ultimately steam peeled and canned for your enjoyment all year long."
- "UNMATCHED CERTIFICATION"
- "Here at Cento, we put our San Marzano Tomatoes through a rigorous set of certification stages to ensure premium quality and authenticity. Year after year we continue to raise the bar for this coveted tomato variety."

12

- "Cento Certified San Marzano Tomatoes have always been, and continue to be grown and produced in the area known as Sarnese Nocerino of Italy. They continue to follow the same premium-quality standards that Cento has always stood by, the standards that made us the leading brand in the United States for San Marzano tomatoes."

- "This ensures shoppers aren't misled by non-genuine products who use the San Marzano name in their products, which, without following the strict criteria, may be inferior quality or contain a different flavor profile."

- "San Marzano tomatoes have a strict set of rules and guidelines to follow from harvesting to packing, ensuring consistency and superior quality. Some of these rules and guidelines include:

  o The species of tomato seeds that can be used
  o The area in Italy where the tomatoes are grown
  o The size, shape and color once harvested
  o The harvesting process
  o The peeling process
  o The packing process"

- "Our Cento Certified San Marzano Tomatoes are certified by one of the largest third party certifying body in the European Union."

- "Cento Fine Foods recognizes the importance of providing only premium quality authentic Italian products, so we take these guidelines to the next level with our own proprietary set of standards and processes."

- "Cento Fine Foods is the only United States brand with its own facility in the Sarnese Nocerino area of Italy. This ensures that we can monitor and control all steps of the harvesting, planting, growing, picking and packaging processes."

- "San Marzano tomatoes are regulated and certified authentic by an independent third party, Agri-Cert, using the guidelines created to regulate San Marzano tomatoes in Italy. These guidelines were created to help differentiate a true San Marzano tomato that follows the criteria from other varietal Italian tomatoes grown outside the designated region or domestically. This ensures shoppers aren't misled by non-genuine products who use the San Marzano name in their products, which, without following the strict criteria, may be inferior quality or contain a different flavor profile."

68. Had Plaintiffs and Class members known the truth about Cento San Marzanos, they would not have bought them or would have paid less for them.

69. As a result of the false and misleading labeling, Cento San Marzanos are sold at premium prices compared to other similar products represented in a non-misleading way.

## VII.   PLAINTIFFS' PURCHASES OF CENTO SAN MARZANOS

70. Plaintiff Mike Andrich repeatedly purchased Cento San Marzanos during the class period. He bought Cento San Marzanos approximately 3-4 times annually during the class period, and his most recent purchase occurred at Claro's Italian Market in La Habra in late 2024 or early 2025.

71. Plaintiff Natalie Gianne purchased Cento San Marzanos approximately 10 times in 2022-

13

2023. Her most recent purchases were at Pavillions and Whole Foods in 2023.

72.     In deciding to purchase Cento San Marzanos, Plaintiffs relied on Defendant's deceptive certification claims and the natural assumption that products available for purchase at retail locations and online would not be marketed with misleading claims.

73.     Because Plaintiffs expected these statements to be true and honest, but they were not, Plaintiffs did not receive the benefit of their purchases.

## VIII.     RELIANCE AND INJURY

74.     When purchasing Cento San Marzanos, Plaintiffs were seeking products of particular qualities, including products were the famous San Marzano tomato grown in the traditional method and certified by and up to the standards of Consorzio di Tutela del Pomodoro San Marzano dell'Agro Sarnese-Nocerino.

75.     Plaintiffs read and relied on, for their Cento San Marzanos, the product's packaging and Defendants deceptive certification claims described herein, which were substantial factors in their purchases.

76.     Plaintiffs purchased Cento San Marzanos believing the products had the qualities they sought based on the product's deceptive labeling and the natural assumption that products sold in stores and online by large companies would deliver advertised benefits, such as those touted on the packaging of Cento San Marzanos. The purchased products were instead unsatisfactory for the reasons described herein.

77.     Plaintiffs purchased Cento San Marzanos instead of competing products based on the false statements and misrepresentations described herein.

78.     Plaintiffs suffered economic injury when they purchased Cento San Marzanos because the products did not provide the advertised benefits, and Plaintiffs would not have purchased Cento San Marzanos, or would have paid less for them, absent Defendant's deceptive and unlawful conduct.

79.     Plaintiffs would consider purchasing Cento San Marzanos in the future if they could do so with assurance that the product would deliver the advertised benefits.

## IX.     DEFENDANT'S PRACTICES WERE "UNFAIR" WITHIN THE MEANING OF THE CALIFORNIA UNFAIR COMPETITION LAW.

80.     Defendant's practices as described herein are "unfair" within the meaning of the California

14

Unfair Competition Law because their conduct is immoral, unethical, unscrupulous, and substantially injurious to consumers, and the utility of this conduct to Defendant does not outweigh the gravity of the harm to Defendant's victims.

81.     In particular, while Defendant's use of fraudulent advertising to sell an unlawful product may have had some utility to Defendant in that it allows it to realize higher profit margins than if it did not use fraudulent advertising tactics, this utility is small and far outweighed by the gravity of the economic harm Defendant inflicts upon consumers. Further, the injury to consumers from Defendant's practices is substantial, not outweighed by benefits to consumers or competition, and not an injury that consumers themselves could reasonably have avoided.

## X.     DEFENDANT'S PRACTICES WERE "UNLAWFUL" WITHIN THE MEANING OF THE CALIFORNIA UNFAIR COMPETITION LAW.

82.     Defendant's conduct described herein also violates multiple provisions of California law including, *inter alia*:

- **Civ. Code § 1770(a)**, prohibiting misleading practices in relation to the sale of goods;
- **Bus. & Prof. Code § 17500 *et seq.***, prohibiting false or misleading advertising;
- **Bus. & Prof. Code § 17200 *et seq.***, prohibiting fraudulent, unfair, and unlawful business activity.

83.     The fraudulent marketing and advertising of Cento San Marzanos constitutes a violation of the CLRA and False Advertising Law and, as such, violated the "unlawful" prong of the UCL.

84.     Defendant's unlawful acts allowed it to sell more units of Cento San Marzanos than it would have otherwise, and at a higher price and higher margin.

85.     In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiffs seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and requiring Defendant to commence a corrective advertising campaign.

86.     Plaintiffs also seek an order for the disgorgement and restitution of all revenue received by Defendant from the sale of Cento San Marzanos.

## XI.     DELAYED DISCOVERY

87.     Plaintiffs did not discover that Defendant's behavior was deceptive, unfair, and unlawful until March 2025, when they learned that Defendants had been selling Cento San Marzanos in violation of California law for years. Until this time, they lacked the knowledge regarding the facts of their claims

15

against Defendants.

88.    Plaintiffs are reasonably diligent consumers who exercised reasonable diligence in their purchase, use, and consumption of Cento San Marzanos. Nevertheless, they would not have been able to discover Defendant's deceptive, unfair, and unlawful practices and lacked the means to discover them given that, like nearly all consumers, they are not experts on food certifications or California law pertaining to the marketing of food products.

## XII.    ADDITIONAL TOLLING ALLEGATIONS

89.    At all relevant times, Defendant was aware that its marketing of Cento San Marzanos violated California law.

90.    As a food producer and importer, Defendant had a continuing and affirmative moral and legal obligation to refrain from marketing and selling products bearing deceptive and misleading labels.

91.    Plaintiffs and Class members had no duty and no reason to inquire as to whether Cento San Marzanos were marketed with deceptive claims. California, as a matter of economic regulation, places the burden of ensuring that advertising is not deceptive on manufacturers, distributors, and sellers of food products, not the general public.

92.    Reasonable consumers, including Plaintiffs, had no reason to suspect Defendant's unfair competition and deceptive advertising and labeling.

93.    Defendant owed a special duty to Plaintiffs and all Class Members, akin to a fiduciary duty, which they violated by marketing the Cento San Marzanos with deceptive certification claims.

94.    During the entire Class Period, Defendant was aware that its conduct was oppressive and cruel, causing economic injury, yet consciously continued these acts for years while knowing the extent of the harm they were causing. Equity and the public policy of California, embodied in its statutes, jointly demand, in such circumstance, that laches and tolling cannot apply in such a way to permit Defendant to continue to enjoy the fruits of their intentional, cruel, oppressive, and unlawful acts.

95.    The claims in this case were also equitably tolled by the pendency of other litigation.

96.    The claims in the case were also tolled by the fraudulent acts of Defendants, as described herein.

## XIII.    CLASS ACTION ALLEGATIONS

97.    Plaintiffs bring this action on behalf of themselves, and all others similarly situated (the "Class"), excluding Defendant's officers, directors, and employees, and the Court, its officers and their families.

98.    The Class is defined as:

All residents and citizens of the United States who purchased Cento San Marzanos in the United States for their own personal or household use, and not for resale, from January 1, 2016 to the present.

99.    Common questions include:

a.    Whether Defendant communicated deceptive messages through Cento San Marzanos' labeling, packaging, website, and Amazon page;

b.    Whether those messages were material, or likely to be material, to a reasonable consumer;

c.    Whether those messages were false, at variance with the truth, misleading, likely to deceive, and/or had the capacity to deceive the public and/or a reasonable consumer;

d.    Whether Defendant fraudulently omitted material information in advertising Cento San Marzanos as authentic San Marzano tomatoes;

e.    Whether Defendant sold and distributed Cento San Marzanos to the public in misleading packaging that was likely to deceive the public;

f.    Whether Defendant's advertising for Cento San Marzanos violated the CLRA and False Advertising Law;

g.    Whether Class members are entitled to restitution and/or damages;

h.    Whether Class members are entitled to an injunction and, if so, its terms; and

100.    The Class is sufficiently numerous, as it includes thousands of individuals who purchased Cento San Marzanos in California during the Class Period.

## XIV.    CAUSES OF ACTION

### First Cause of Action

### Unfair Competition Law, Unlawful Prong

### Bus. & Prof. Code §§ 17200, *et seq*.

101.    In this and every cause of action, Plaintiffs reallege and incorporate the preceding allegations as if fully set forth herein.

102.    The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute "unlawful" business acts and practices in that Defendant's conduct violates the

17

California False Advertising Law, and the California Consumer Legal Remedies Act, as alleged herein.

103.    Defendant's conduct also violates other provisions of California law including, *inter alia:*

- **Civ. Code § 1770(a)**, prohibiting misleading practices in relation to the sale of goods;
- **Bus. & Prof. Code § 17500 *et seq.***, prohibiting false or misleading advertising;
- **Bus. & Prof. Code § 17200 *et seq.***, prohibiting fraudulent, unfair, and unlawful business activity;

104.    Defendant leveraged its deception to induce Plaintiffs and members of the Class to purchase products that were of lesser value and quality than advertised.

105.    Had Plaintiffs known that Cento San Marzanos were not authentic, DOP certified San Marzano tomatoes, Plaintiffs would not have purchased them, or would have paid less for them.

106.    Plaintiffs suffered injury in fact and lost money or property as a result of Defendant's deceptive advertising: they were denied the benefit of the bargain when they decided to purchase Cento Marzano over competing products, which are less expensive, and do not make misleading or false claims on their packaging.

107.    Cento's unlawful acts allowed it to sell more units of Cento San Marzanos than it would have otherwise, and at a higher price, and higher margin.

108.    Had Plaintiffs been aware of Defendant's false and misleading advertising tactics, they would not have purchased Cento San Marzanos, and had Defendant not advertised Cento San Marzanos in a fraudulent manner, Plaintiffs would have paid less for them.

109.    In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiffs seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and fraudulent acts and practices described herein, requiring Defendant to commence a corrective advertising campaign, and awarding the class restitution of all monies Defendant obtained from the sale of Cento San Marzanos. Plaintiffs have no adequate remedy at law.

### Second Cause of Action

### Unfair Competition Law, Fraudulent Prong

### Bus. & Prof. Code §§ 17200, *et seq*.

110.    Cal. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

18

111. The acts, omissions, misrepresentations, practices, and non-disclosures of Cento as alleged herein constitute "fraudulent" business acts and practices in that Defendant's conduct has a likelihood, capacity or tendency to deceive Plaintiffs, the Class, and the general public.

112. Cento leveraged its deception to induce Plaintiffs and members of the Class to purchase products that were of lesser value and quality than advertised.

113. Plaintiffs suffered injury in fact and lost money or property as a result of Cento's deceptive advertising: they were denied the benefit of the bargain when they decided to purchase Cento San Marzanos over competing products, which are less expensive and do not make misleading claims on their packaging.

114. Had Plaintiffs been aware of Cento's false and misleading advertising tactics, they would not have purchased Cento San Marzanos, and had Defendant not advertised them in a fraudulent manner, Plaintiffs would have paid less for them.

115. In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiffs seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and fraudulent acts and practices, requiring Cento to commence a corrective advertising campaign, and awarding the class restitution of all monies Defendant obtained from the sale of Cento San Marzanos. Plaintiffs have no adequate remedy at law.

## Third Cause of Action

### Unfair Competition Law, Unfair Prong

### Bus. & Prof. Code §§ 17200, *et seq*.

116. The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute "unfair" business acts and practices because:

- Defendant's conduct is immoral, unethical, unscrupulous, and offends public policy;
- the gravity of Defendant's conduct outweighs any conceivable benefit of such conduct; and
- the injury to consumers caused by Defendant's conduct is substantial, not outweighed by any countervailing benefits to consumers or competition, and not one that consumers themselves could reasonably have avoided.

117. In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiffs seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and fraudulent acts and practices; requiring Defendant to commence a corrective advertising campaign; and awarding the class restitution of

all monies Defendant obtained from the sale of Cento San Marzanos. Plaintiffs have no adequate remedy at law.

### Fourth Cause of Action

### Consumer Legal Remedies Act

### Civil Code §§ 1750, *et seq.*

118.    The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

119.    Defendant's policies, acts and practices were designed to, and did, result in the purchase and use of Cento San Marzanos for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

- **Civil Code § 1770(a)(5),** representing that goods have characteristics, uses, or benefits which they do not have;
- **Civil Code § 1770(a)(7),** representing that goods are of a particular standard, quality, or grade if they are of another;
- **Civil Code § 1770(a)(9)**, advertising goods with intent not to sell them as advertised; and
- **Civil Code § 1770(a)(16),** representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

120.    As a result, Plaintiffs, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant were unjustly enriched.

121.    As a further result, Plaintiffs and the Class have suffered damages, and because the conduct was deliberate, immoral, oppressive, made with malice and contrary to public policy, they are entitled to punitive or exemplary damages.

122.    Pursuant to section 1782 *et seq.* of the CLRA, Plaintiffs notified Defendant in writing by certified mail of the particular violations of § 1770 of the Act as to Cento San Marzanos and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act.

123.    Defendant received Plaintiffs' written notice on or around April 1, 2025.

### PRAYER FOR RELIEF

124.    WHEREFORE, Plaintiffs, on behalf of themselves, all others similarly situated, and the

20

general public, pray for judgment against Defendant as follows:

a) An order confirming that this class action is properly maintainable as a class action as defined above, appointing Plaintiffs Mike Andrich and Natalie Gianne and their undersigned counsel to represent the Class, and requiring Defendant to bear the cost of class notice;

b) An order requiring Defendant to pay $500 in restitution, damages, punitive damages, and interest to each Plaintiff;

c) An order requiring Defendant to pay $25,000,000 or a greater amount to be proven at trial in restitution to Class members, and $10,000 to each Plaintiff as an incentive award, or such greater amount the Court deems fair and reasonable;

d) An order requiring Defendant to disgorge any benefits received from Plaintiffs and its unjust enrichment realized as a result of its improper and misleading advertising, marketing, sale, and distribution of Cento San Marzanos;

e) An order awarding Plaintiffs and the Class actual and punitive damages;

f) An Order declaring the conduct complained of herein violates the Unfair Competition Law;

g) An order requiring Defendant to cease and desist its deceptive, unconscionable, fraudulent, and unlawful practices;

h) An order requiring Defendant to engage in a corrective advertising campaign;

i) An award of prejudgment and post judgment interest;

j) An award of attorney fees and costs of $500,000, or such greater amount the Court awards as fair and reasonable; and

k) Such other and further relief as this Court may deem just, equitable or proper.

**XV.   NO JURY DEMAND**

Plaintiffs do not demand a jury trial.

DATED: May 4, 2026                    Respectfully Submitted,

s/ Gregory S. Weston
**THE WESTON FIRM**
GREGORY S. WESTON

**Counsel for Plaintiffs**